My name is John Karpinski. I'm here on behalf of Clark County Natural Resources Council and Tom McConaughey. It's my first opportunity to be before you and thank you for that opportunity. I'd like to reserve eight minutes for rebuttal of my time. The ultimate issue in this case is did Clark County violate the provisions of their Clean Water Act and PDS permit by adopting regulations that were not, quote, equivalent, unquote, to the 1992 Puget Sound Water Quality Manual. What I want to focus on today is three things. One is a brief background and some of the facts that I think are relevant to the decision. Two is why we think the county violated this equivalency standard. And third is a discussion on deference. Now, since I anticipate the county is going to spend most of their time on deference, a large part of my deference argument may end up being on rebuttal. Just some quick background. Congress passed a deadline that said political jurisdictions over 250,000 had to get a NPDES discharge permit for their stormwater systems. That was due February 4th, 1993. Clark County failed to do so for years. The Washington Department of Ecology said you didn't need to get this permit and gave the Clark County repeated extensions. CCNRC sued, said DOE, the Washington State Agency, didn't have the authority to extend an act of Congress. Judge Bryan in Waste Action Project v. Clark County, CCNRC was a co-plaintiff in that, 45 feds up, 1049 said yes, Clark County has to go get a permit. And DOE was wrong to extend this deadline of Congress. The county obtained a permit from DOE which gave the county a year to adopt equivalent ordinances to the Puget Sound Drainage Manual. The county then passed ordinances about a year later with 22 major exceptions and less than standards. And they did it in a way that really sort of jumbled things about and made it very hard to track. It took us six months to be able to send out the 60-day notice to track all of that. The lawsuit was filed on April 5th, 2001. Three weeks later, the Department of Ecology there were three exceptions to the various standards that were not found in the Puget Sound Manual that Clark County had in their ordinances. And there were six lesser standards that we moved on where the Puget Sound Manual essentially says you won't have impacts and the Clark County says we will allow substantial impacts but we won't allow significant impacts. And we think that's not equivalent. So we moved for summary judgment. The county moved for summary judgment. Clark granted the county's motion for summary judgment, denied ours, and basically, at least in our mind, didn't reach the merits of our case because of the deference issue. And I'll talk more about the deference issue, but because we didn't feel like we had an opportunity to really get to the merits of the case, I want to talk about what these violations are, and then we'll put it in the context of deference and what the Court would have to do. Why didn't you sue the State? Why didn't I sue the State? Yeah. It was the ‑‑ They made ‑‑ you're challenging their ‑‑ ultimately you're challenging their decision, correct? No, I'm challenging whether the county violated its own permit. And as far as I can tell, there's no formal procedure for the State to say, it says a year from now, go and do this. Well, the earlier litigation established the county had to get ‑‑ that the State could not extend the deadline. Correct. And the county needed a permit. Right. So it applies for a permit. It's granted, but subject to conditions that had to be fulfilled subsequently. Right. Right? Correct. Okay. And so the county then takes action to satisfy those conditions. Right. And submits the revised plan or whatever you want to call it, the changes to the local ordinance that comply with the conditions. Yes. And the State says, great. No, the State says nothing. See, that's the whole problem. Well, but the letter says we approve. But in my opinion, the letter only exists because we filed the lawsuit. There is no formal procedure. It says the Department of Ecology has completed its review of those ordinances and finds that they satisfy the permit requirement. Right. Okay. Now, what if the Department of Ecology had never issued this letter? Where would you be? Be in the same spot. If the county has permit requirements, they didn't meet them, we can sue them for violating their permit. The only, in my opinion, and this is just my opinion, the only reason why that letter exists was to try to cover the counties, whether they satisfied it or not, because Washington State doesn't have any procedures that says once you submit this, here's, here's, we're going to have a public hearing on this, and there's no procedure whatsoever. The only reason this letter exists is because of this lawsuit. Well, maybe I'm jumping ahead of myself, and I don't want to, I know you have some thoughts you want to get out or share with us. But ultimately, the case is all about deference, how much deference we give to this determination in this letter. Right. But yet the entity that did this and who is responsible for this is not a party to this lawsuit. That's right. It's definitely kind of strange. It is funny because almost all the deference cases, and I do want to get to the merits of it, but I will talk about deference, are mostly referring to deference to Federal agencies and construction of Federal statutes. Well, you can do the same thing. I have no problem with the concept of doing it in here with respect to the State, especially when the State is designated as the agency responsible for approving these permits. Yeah. Here, again, there was no formal procedure for determining how and, you know, if there was, let's say DOE was required to have a permit, for example, or excuse me, a public hearing as to whether or not this met the conditions that we could go in, then I think that the situation may be different. But this was just go ahead and do this. This is just like a normal NPDES permit. Here's your permit conditions. You know, send us a report as to how much biological oxygen demand you're dumping into the system. We don't have to sue DOE for that. It's just whether you're violating the permit or not. That's at least our perspective, if that's helpful. But I will talk more about deference in a little bit. But I'd like to get to the merits because I feel like I've never gotten a chance to get to the merits on this. There's nine major differences between the county standards and what DOE did that we moved for summary judgment on. And let me just focus on one because I think it's the clearest one. Get your strongest. I'm going to get my strongest one. Some of them seem to be pretty obvious to me, you know, sediment, eliminate the sediment. Get your strongest unequivalent. Okay. I'll give you two. The first is the one that says DOE says you shall maintain the hydroperiod of a wetland, which is the water balance. You don't want to drain it. You don't want to flood it. You have to maintain that balance. Okay. And it not only says you shall maintain it, you have to look at alternative discharge locations. You have to look at natural water storage. You have to look at infiltration opportunities. You've got to do all this stuff. Okay. What does the county ordinance say? You cannot cause significant degradation of the hydroperiod. So, in other words, all these things, all the alternative discharge, you don't have to do the natural water storage. You don't have to do or even look at the infiltration opportunities. You don't have to do or look at. You don't have to maintain it. That doesn't mean the same thing, the balance and the degradation. This is not the same thing. Well, what this does, at least in my mind, says that you can substantially allow the hydroperiod to degrade, but you can't significantly allow it to degrade. The Puget Sound Manual says you shall maintain it. The county allows a substantial diminution. Maybe a clearer example is the requirement that says you can't put a stormwater facility in a naturally vegetated buffer. The county allows 20-foot natural trees to be cut down in a buffer for these facilities. I mean, that's probably the clearest one. To me, a 20-foot tree is natural vegetation, and the county allows that to be removed. I could go through a lot of these other things, and maybe this is minute, but to my organization and to protecting wetlands, protecting water quality, all of these things are important, and the cumulative effect of all these changes are significant. That's why we're here, and that's why we have concerns. They simply exempt certain things. This is the Puget Sound Manual. You would think if there was a large body exemption, it would be for Puget Sound, in the Puget Sound Manual. No, the county exempts the major water bodies in Clark County. So there's a lot of issues there that we think need to be looked at. The county says that they've done some other things that are better. We think they're just factually wrong on that, and we'll just rely on our briefing on that issue. But then the issue becomes deference. Which standard do you use? Do you use Chevron deference? Do you use Gidmore-Christensen deference? Do you use, and I hope I'm pronouncing this right, our deference? In any of those cases, we think you still have to reach the merits. Basically, I've always considered deference as sort of the tiebreaker, and, you know, how close do you have to be in order to get to that point. But even in Chevron deference, our deference, first of all, you have to show it's ambiguous. We don't see anything that's ambiguous about equivalent here. Second of all, you grant deference unless it's plainly erroneous or inconsistent. We think that it's plainly erroneous and inconsistent with the rules. Now, here's the factors that we think are important in figuring out which to. Bill, when you're talking about, usually when you talk about deference here, administrative deference, you're talking about some agency that we're giving deference to because of a regulation they promulgated interpreting a statute or something of that nature. Now, when you use the term equivalent and the interpretation of equivalent, who are you talking about in this scheme? DOE said the permit must be equivalent to the Puget Sound Manual. And to me, the first, when I read the cases, and maybe I'm misreading the cases, when I read the cases on deference, the first step of the analysis is, is that word ambiguous? And in our mind, equivalent is not ambiguous. There's no real debate here whether it is or is it not. And you don't grant deference unless it is ambiguous. And then you grant the agency deference of some level to determine their own document. I'm getting real close to the amount of time I reserved, but let me just finish this deference point so I'll end up taking a little less, reserving a little less time. But here's the factors that we think that we should look at in terms of which deference test do you use. First of all, it's not ambiguous. Second of all, this is, in our mind, a post hoc rationalization letter. This is a letter that came out after the litigation. This is a one-page letter that says everything's fine. Okay. We think it's a post hoc rationalization letter. They submitted their request for approval before the lawsuit was filed. They, yes. And the letter came after the lawsuit was filed. Yes, but know that there was a substantial amount of time in between because it took us six months to write our 60-day notice. So this is like about a year after it came out. Maybe it's a total coincidence, but it looks a little fishy to me. The letter has no substance. I mean, normally you give deference to some sort of reasoned interpretation. Basically, it looks good to us without any sort of reasoning, rationale, or why. It is, and we think that that deserves less deference on that basis. The letter regulation wasn't subject to notice and comment rulemaking. Another issue is that this same agency has already been found in violation of the Clean Water Act for this same issue. And, you know, I don't have a case on that, and I'll admit that. But to me, that's got to factor in there somewhere. These people already said, more or less, we don't care if you ever get the permit. And now we're supposed to give them deference in terms of how the permit's done. Maybe you don't have a problem with that, but I got a problem with that. And I think that's an issue and that's a concern in terms of the deference. But no matter what test you use, and some of the cases talk about both tests, you still reach the issue of is it plainly erroneous. And we think cutting down 20-foot trees where you're supposed to keep naturally vegetated buffers is plainly erroneous. Thank you very much, and I'll reserve the rest of my time. Fine. May it please the Court, my name is Bronson Potter. I represent Clark County in this matter. Before I get into the administrative law issue, I think that there's a threshold issue as to whether the plaintiff met its burden of producing competent evidence that the county violated the condition of its permit. And this is a Celotex or Orr v. Bank of America question. Under Celotex, a defendant's entitled to summary judgment if a plaintiff, in responding to a motion for a summary judgment, fails to produce competent evidence to establish any element on which it has the burden of proof. Specifically in this case, the question is, did the plaintiff produce evidence that the net effect of the differences between the county ordinances and the Puget Sound Manual resulted in the discharge of more pollutants to receiving waters? And the reason why that's the specific issue is because the way ecology defines equivalence is by looking to the protection accorded to receiving waters through the adoption of ordinances equivalent to the Puget Sound Manual. Mr. Karpinski has his opinions about the differences between the county's ordinances and the Puget Sound Manual and the significance of those differences. But he did not produce one shred of evidence in the trial court on what the effect of those differences are on receiving waters. Nothing. Examine the record. There's nothing there other than Mr. Karpinski's analysis of the ordinances and the Puget Sound Manual. On the other hand, the county produced the opinion of the engineer who is in charge of the water quality section of the Department of Ecology. And that opinion was that the differences pointed out by CCNRC do not affect the equivalency of the county's ordinances or the protection that they provide receiving waters. The trial court correctly determined that there weren't factual disputes in this case. In fact, what's a little remarkable is the record before the Department of Ecology was the same record that was before the trial court. And that is the table that you've seen of the provisions of the Puget Sound Manual, the ordinances, the difference, and why the county thinks that they're the same, and a table on why the county thinks that it's more protective. Because the plaintiff didn't produce competent evidence of what the effect is of those differences, it did not prove a violation of the condition of the permit, and summary judgment was properly granted to the county. I think that should be the first step of your analysis in this case, and that should end it. So the trial court not only says the state agency has decided this, but the trial court also said the only evidence I've got is the expert opinion, and there's been no issue of fact raised against the expert's testimony about the equivalent effect. That's correct, Your Honor. You can look at that either way. Deference to the state are no fact issues. You could support the trial court's conclusion, affirm its decision on either basis in this case. Yes, sir. I'm just suggesting that the analysis should first be whether or not as a matter of evidence. I'm just trying to understand your position. Yeah, I think you do. Moving to the administrative law question. The court, though, I mean, to address further the question Judge Reed raised, the district court, Reed, didn't address how it came to the conclusion that it shows the great deference standard right under Udall v. Tolman. That's correct, Judge. The court referenced Udall v. Tolman. Why is it entitled to great deference? Why is the ecology determination entitled to great deference? The district court didn't explain that. Well, I think by the court didn't give us any reasoning. I think by citing Udall v. Tolman, the district court did correctly apply the body of law that's applicable to agencies' interpretations of their own regulations. He didn't cite Chevron or any of the other cases relating to statutory interpretation. So I think Judge Burgess understood that we've got a case here of a regulatory interpretation. Udall says I have to give great deference to that interpretation, and he's correct in that, and that he said he's considered the briefs, the affidavits, and in considering that, that he does not believe that they – well, he concludes that the county's ordinances do provide equivalent protection, and he does reference the ecology opinion and gives a great deference. Well, that's basically what he did. That's what he did. That's it. Well, I don't know what you mean, Your Honor, by that. Well, he didn't make his own assessment. Well, I don't agree with that. Show me in his – in this record where he made his own assessment of equivalency. It's exactly that. In his opinion. He didn't even say, well, that's a reasonable interpretation of the Puget Sound plan. He just says, you know, that's it. I mean, I can't even – in effect, he's saying I can't even look at the question. Well, see, that's where I would respectfully disagree. He does say that he has no – We have it right here. Show us in this order. I'm on page 4 of the order. Right.  I got it. The Court has no choice but to accord the OE's finding and interpretation of its own term, great deference. See, Udall v. Tallman. I think that's a correct statement. For this reason, the Court declines plaintiff's invitation to perform a meticulous review of the defendant's code revisions and complete them to the PSM. Excuse me. The next sentence. Right. After a careful review of the briefs, the porting documents, and affidavits filed in this matter, the defendant has complied with the special condition S-9A-1 and is not in violation of the stormwater control duties under the permit. So he does say that he reviewed the entire record. It's not that he just looked at this letter and said that's it. I disagree that that's what he did. And I don't think that that's giving him due deference when he says he's considered the entire record. This is De Nova, though. This is De Nova. You're correct. But I'm answering your question about is all that he did is look at the ecology letter and say that's it. That's not what he did. But for this reason, the court declines. The meticulous review. Well, he's putting his own gloss on things. This is the Puget Sound man. It's 600 pages of technical documents, tables, engineering schematics. The fact that he doesn't go into the, again, like I say, the level of minutia that the plaintiffs do doesn't mean he didn't consider the record. The other kind of, I'll say, kind of a shortcut to district court. You say it cites Udall. Udall v. Tong. But, you know, Udall is a case where deference is granted to the secretary of the interior, right, in interpreting statutes and regulations. He was, you know, directly responsible under an act of Congress for administering. And we don't here have a federal official charged with administering a federal program, making interpretation. We have a local agency which sort of, you know, has been delegated the task. And it's not clear to me that Udall applies to that kind of agency. Well, under the Clean Water Act, Your Honor, the Congress specifically expressly delegated to the state the authority to impose conditions on permits and to enforce the permits and to cite for violations of the permits. So I think there is an express delegation to the state agency of this authority. And I don't think that it's significant whether it's a state agency or a federal agency where Congress has specifically delegated that authority to either the administrator of the EPA or the state. Well, in approving these modifications to the county code as a condition of the permit, the state was not, in your view, was the state interpreting either a regulation, a statute or something? What was the state doing? I think the most important point I can make in this argument is to answer that question. Maybe you can enlighten me by doing so. The bone of contention in this case is whether or not the county complied with the condition of its permit requiring it to adopt ordinances equivalent to the Puget Sound Manual. I think we'll agree on that. Whether the ordinances were equivalent. Whether the ordinances were equivalent, yes. The Clean Water Act does not contain any reference to the Puget Sound Manual. Or how to interpret the term equivalent. Well, the term equivalent is an ecology, yes, or how that's determined. But that's an ecology phrase. With respect to the discharge of pollutants into stormwater, the Clean Water Act, Section 1342p3, says the following. It says that permits for discharges to stormwater shall require controls to reduce the discharge of pollutants to the maximum extent practicable. We call that the MEP standard. The Clean Water Act does not provide any definition of what is meant by reducing to the maximum extent practicable. Rather, at that same section of 1342p3, it provides that the administrator or the states are to determine the management practices and control techniques that are appropriate to achieve the MEP3 standard. The plaintiff, very significantly, does not challenge ecology's interpretation of the statute to achieve MEP by adopting the Puget Sound Manual. That's where I think ecology was interpreting the statute. Ecology was saying, how do we achieve MEP? We achieve it by saying, in part, you have to adopt ordinances equivalent to the Puget Sound Manual. The plaintiff endorses, embraces, and wants enforcement of that interpretation of the statute. They want equivalency to the Puget Sound Manual. So that's where the statutory interpretation took place. That was in a permitting process that was subject to notice and comment, a hearing, appeal. What they're complaining of is how ecology is now interpreting its phrase of equivalency and how that's applied to the county's permit. It seems like it's applied to a specific factual kind of content. Yeah, that's right. When you look at it like that, at least that's the kind of way I was looking at it. Clearly, it's not Chevron deference. It's more like Skidmore. The principles, I should say, principles. If you're going to give it any deference at all, you look at sort of its expertise, the rationale that it offers, its reasoning, whether there's consistency. Skidmore factors. The Skidmore factors. Right. But the Skidmore factors don't come into play where you're talking about an agency's interpretation of its own regulation. And I think that would be, if you do a published opinion in this case, I think one of the most important things you could do is say, we've made a distinction between cases involving statutory interpretation and regulatory interpretations. And you set those out in League of Wilderness Defenders versus the U.S. Forest Service, in Leslie Salt Company versus the United States, in MSR Public Power versus BPA, in Navier versus Slayton. In every one of those cases, you expressly pointed out the distinction between cases involving statutory interpretation, which are Chevron, Skidmore, or no deference, and regulatory interpretation where the agency interpretation is entitled to controlling weight, is the exact term used, unless it is inconsistent with the regulation. But there's also reference to a plainly erroneous standard. But the cases do not overlay as Skidmore factor analysis on regulatory interpretation cases. And that's, I think, where, you know, you have to make a clear dividing line. What are we talking about? Well, you know, even if we apply the standard you're arguing for here, see, the problem is neither the state nor the district court went into any reasoning at all. The state says, yep, equivalent, no doubt. And the district court said, well, the state said it's equivalent. I can't look at it. I mean, we have no, you know, nothing on which to base a determination. Yes. You know, the state's interpretation regulation is within the realm of reason or it's not clearly erroneous. Just it's fear, isn't it? I mean, it looks like something you can't even tell whether they even looked at it. Looks like just a one line form letter. Well, how you want to characterize it. It's written by an engineer, not a lawyer, for one thing. It's not intended to be findings of facts and conclusions of law. It is acknowledging. It has no engineering justification. It acknowledges the differences pointed out by the plaintiff. And it concludes that those differences. Are you talking now about the expert's testimony? The opinion. You're talking about the letter, aren't you? Yeah, that's what contains the engineer's opinion is the letter from the Department of Ecology. So it isn't just a one sentence. You're good. It does acknowledge that they reviewed the challenges, that they do acknowledge that there are differences, but that those differences don't affect equivalency, which is defined as the net protection applied or that receiving waters are provided. Well, can we look at that and go back to the expert's testimony and understand the details of why that conclusion is given? Well, yes, you can. I mean, it is a de novo review. You do have the same record that the trial court had, and I think that record on a de novo review would support the district court's conclusion. We sort of touched on this issue, probably touched Tashima, in his opinion in Russian River Watershed versus City of Santa Rosa. Yes. And there we talk about deference. Yes. But there's a significant difference between that case and this case. In that case, it followed a court trial where the state presented its witnesses to explain how it came to its determination. Yes. And, you know, there's a record here. You can see their rationale and reasoning and what they were trying to do and what they were trying to accomplish. And there, after noting all of that, we say they're entitled to substantial deference in their assessment. And here we have nothing. I thought about Russian River and how that is different than the fact that there was a trial in that case. And I think it's an important case because it does involve an agency's interpretation of an NPDES permit. And so, you know, it fits. I think the reason that why – what is the significance of the fact that there was a hearing, an evidentiary hearing in that case, and in this case it was a summary judgment to cite on affidavits, and is that significant to the deference? And I think if there had been a factual dispute, whether or not there was an evidentiary hearing is important. But in this case, there aren't factual disputes. And that's what Judge Burgess specifically said. He said, I've got the record. I've got the ordinances. Again, it's the same record that was in front of the Department of Ecology. And absent a factual dispute, I don't think that the fact that there wasn't a live witness testimony hearing is significant to the deference analysis. I think some other cases that aren't in my brief, that one was not, but neither was Alaska Center for the Environment versus the U.S. Forest Service, where it was a Forest Service interpretation of an agency handbook that helicopter permits were categorically exempted. This court said that that determination was entitled to controlling weight. Another case that I didn't cite, I should have, was Bay Area Addiction and Research Treatment. Again, that was a case involving whether or not zoning was subject to Title II of the ADA. The court looked at the Department of Justice's technical assistant manual. It didn't specifically provide, or I think it did, it provided that zoning was a program subject to Title II and controlling weight was given to that. And then also Barden versus City of Sacramento, another ADA case, involving whether or not sidewalks are a program subject to ADA. In that case, the DOJ manual was not specific, but DOJ interpreted the manual to apply to sidewalks, and controlling weight was given to that interpretation of its regulation. If you think that this case involves a statutory interpretation, I think the Chevron standard would be what you would apply, because clearly this is a situation where Congress did delegate to the agency the authority to make these types of determinations which have the force of law. It specifically gave them the power to choose the control technique, to enforce the permit. For myself, counsel, I know what Chevron holds, and I just don't find a Chevron problem in this case, just for myself. Yeah. I don't think that we should be talking about statutory interpretation in this case. It's clearly a regulatory interpretation, so I'll leave off with that, unless you have any other questions about statutory interpretations or any questions at all. Thank you. All right. Thank you, Mr. Potter. Again, John Karpinski on behalf of CCNRC. Basically, what we wanted was our day in court, our opportunity to say these standards were wrong, and we didn't really get that. We didn't get an analysis from DOE. We didn't get an analysis in the trial court. I think we've raised enough issues and concerns and differences. On the first point that Mr. Potter raised about the record for the district court, what did the plaintiffs submit? Okay. We basically submitted the code and said, compare the two codes. I can't recall if you offered an expert's declaration or not. We did not, and neither did the county. Essentially, the only declaration, and that was the exact point that I was getting to, Your Honor, was the declaration of Bronson Potter saying, here's the letter we got from DOE. There was no expert testimony at all. I mean, Mr. Bronson, Mr. Potter can characterize the DOE letter as expert, but it's a letter. And what he had is this was the letter from the agency. The only declaration that was part of was his declaration saying, we got this letter. So there was really no expert testimony. What this was was, you know, almost like a facial challenge. On its face, is there enough issues to go forward or resolve this case? What was the nature of the administrative record that was brought forward on summary judgment? That had testimony, did it not, by the State's expert? No. Just the letter. And just Mr. Bronson or, excuse me, Mr. Potter. The summary judgment record does not contain expert statements of any kind? No. None whatsoever. Unless you want to consider the letter submitted to be an expert comment, but it wasn't even a form of a declaration. It was simply a declaration from the agency. What was Mr. Potter referring to? The letter. The letter from DOE is from an engineer. So he's calling that expert testimony. He had a large catalog of paper there. Oh, what that is, Your Honor, that is the Puget Sound Manual, the 600-page drainage manual. But just, and let me talk about that for a second. Because what I did in my briefing here is I took the relevant pages of the Puget Sound Manual and then I put the relevant pages of the Clark County Code. I added it up while Mr. Bronson, while Mr. Potter was saying. I thought you were talking about something. It's like 36 pages. I thought you were talking about something that pertained to this case. No, no, no. All we're talking about is the letter. All right. And in this, it's like 36 pages to read what the Puget Sound Manual says and to read what the county code says. That's what I wanted somebody to do. And that's what we think we had our ability to have a day in court to do, and we didn't have that. Well, that leads right into my question now. Assuming we're able to agree upon and can figure out how much deference, if any, should be given to the Department of Ecology's engineer's letter. Right. In other words, you know, is it some kind of a presumptive regularity? Now, I assume we can agree on that then. With that in mind, it seems to me you're saying that this record is sufficient for us to decide, because we're just talking about interpreting written documents, whether or not the ordinance is equivalent to the PSM. Yes. You agree with that? Yes. I know that it doesn't require a remand. It doesn't require, you know, a trial and experts to be called and testimony to be taken. Is that? The way I look at it, and again, maybe I'm wrong, this is like a facial challenge. You compare the two on its face. Is it equivalent? Is it not equivalent? And I think the ---- It doesn't require any experts. Well, if the court ---- To understand that, at least from our perspective, you might want to have an expert's declaration sort of going through. Right. If the court feels that's appropriate, then the issue would be to remand it back to the trial court saying all the motions for summary judgment are denied and we have the trial. But as I say, part of that depends on how much deference we should give to the engineer's opinion that it is equivalent. I understand that. And I think that when we're talking about Skidmore deference, I think that's where I think this shakes out in terms of what power to persuade does the one-page DOE letter have. We don't think it has a lot of power to persuade because it doesn't say why. And we think it's a post hoc rationalization. And we think that simply it was plainly erroneous in any case to go ahead and say that these big changes, cutting down 20 foot trees, for example, is equivalent to not allowing stormwater facilities to be built in these areas. I think that's all I have to say. Thank you very much. All right. Thank you. We thank both counsel. This case is submitted for decision.
judges: Reavley , Tashima, Paez